PETER F. McLAURIN, Respondent, *v.* THE CUBA COMPANY,
Appellant.

*Option to purchase land — a contract based on the statement that a party thereto had
an option to purchase land — it will not be enforced where he had only authority to
sell it — his right to compensation for services in effecting a conveyance of the land
to the other party to the contract.*

An option for the purchase of land implies an agreement by the owner of the
land to give the holder of the option the exclusive right to purchase the prop-
erty at a fixed price within a time certain.
A written authorization from the owner to sell the land at a certain price per
acre does not constitute an option.
Peter F. McLaurin represented to a corporation which desired to purchase cer-
tain lands that he had an option on such lands. In reliance upon such repre-
sentation, the corporation entered into a contract to pay McLaurin certain
amounts if he would turn over such option to the corporation. The corpora-
tion subsequently acquired the lands through McLaurin's efforts. McLaurin
did not, in fact, have any option for the purchase of the lands, but had simply
written authority from the owners thereof to effect a sale at a certain price per
acre. It did not appear that similar authority had not been given to others or
that the owners had restricted their power to negotiate a sale of the land
themselves.
*Held,* that McLaurin could not enforce his contract with the corporation, as the
alleged option which constituted the consideration for the contract did not
exist;
That, having acquired the lands through the result of McLaurin's services, the
corporation was obligated to pay him the fair and reasonable value of such
services.
HOOKER, J., dissented.

APPEAL by the defendant, The Cuba Company, from a judgment
of the Supreme Court in favor of the plaintiff, entered in the office
of the clerk of the county of Westchester on the 8th day of July,
1902, upon the verdict of a jury, and also from an order entered in
said clerk's office on the 8th day of July, 1902, denying the defendant's
motion for a new trial made upon the minutes.

*Howard Mansfield* [*Herbert C. Lakin* with him on the brief],
for the appellant.

*George B. Covington* [*Herbert A. Heyn* with him on the brief],
for the respondent.

WILLARD BARTLETT, J.:

The plaintiff in this action has recovered $50,000 as compensation for services rendered by him to the Cuba Company under a contract alleged to have been made with Sir William Van Horne, the president of that corporation. The services consisted chiefly in the acquisition and subsequent transfer to the company of some 44,000 acres of land, known as the Cauto tract, in the Santiago province of Cuba. According to the plaintiff's own testimony, he told Sir William Van Horne that he had an option in writing for three months on these Cauto lands at certain prices, which he specified. Sir William Van Horne asked him what he would take to turn the option over to the Cuba Company "and come with" that corporation, and finally Sir William Van Horne agreed, in behalf of the company, to pay him for his services at the rate of $8,000 a year, and to give him one share of the corporate stock of the face value of $50,000, after he had gone down to Cuba and bought the lands.

The Cauto tract was subsequently acquired by the defendant through the efforts of the plaintiff. His demand for the transfer of the one share of stock was refused, and he thereupon brought this action. The value of such share was agreed upon as being $50,000, and he has recovered a verdict for that amount. From the judgment entered upon that verdict this appeal is taken.

I think that the judgment should be reversed on account of the plaintiff's failure to prove that he really had any option for the purchase of the property in question. An option of this kind implies an exclusive right on the part of the holder. (21 Am. & Eng. Ency. of Law [2d ed.], 925.) It is something more than an authority to sell to another. (*Kellow* v. *Jory*, 141 Penn. St. 144.) An option has been well defined to be "neither a sale nor an agreement to sell. It is simply a contract by which the owner of property (real estate being the species we are now discussing) agrees with another person that he shall have the right to buy his property, at a fixed price, within a time certain." (*Ide* v. *Leiser*, 10 Mont. 5; 24 Am. St. Rep. 17.) Taking the plaintiff's own narrative of his interview with Sir William Van Horne as true it is plain that the plaintiff represented and that Sir William Van Horne assumed and acted on the assumption that the plaintiff possessed some exclusive or preferential right of peculiar value which he could exercise in respect to the disposition

of the lands which it was proposed to obtain for the Cuba Company. Sir William asked the plaintiff what he would take "*to turn the option over* to the Cuba Company." Again the plaintiff says, "we talked over the various things in regard to the Cauto lands and also in regard to the railroad. He wanted to know on what conditions *I would turn them over*," and still further the witness makes Sir William say "the Cuba Company want that tract * * * and on what ground are you going *to turn it over ?*" Here, it seems to me, was the clearest implication, in which the plaintiff acquiesced, that the plaintiff held a contract for the control of the Cauto tract which could be acquired by the Cuba Company only through him. The evidence, however, is in my opinion utterly insufficient to establish the possession by him of anything which can legally or even in common phraseology be denominated an option on these lands. Giving entire credence to his own testimony on the subject and that of a man named Salmon, from whom he derived the so-called option, the most that he had was a written authorization from the owners to sell their lands for certain amounts per acre. It does not appear that similar authority had not been given to others or that there was any restriction upon the power of the owners to negotiate and complete a sale themselves. It is true that the Cuba Company subsequently acquired title to the lands through the efforts of the plaintiff, as has already been said, paying $100,000 therefor, and as the defendant has thus accepted the result of the plaintiff's services it is undoubtedly liable to pay him their fair and reasonable value if it has not already done so. The main question here, however, is whether he is entitled to enforce Sir William Van Horne's agreement, assuming that agreement to have been made, to transfer to him a $50,000 share of the defendant's stock. As I have already endeavored to show, that agreement, upon the plaintiff's own statement of it, was based upon the possession of a right of control over the property on the part of the plaintiff which really did not exist. The only conceivable purpose in agreeing to pay the plaintiff $50,000 for obtaining property the purchase price of which was only double that amount, must have been to procure from the plaintiff rights which he alone possessed and which could not be acquired, at the time in question, from anybody else.

It is suggested that the defendant cannot be heard to object to

the recovery on the ground that the alleged option was non-existent, because no charge of fraud or misrepresentation in this respect is set up in the answer.   Such an averment, however, could hardly be made in view of the denial by the defendant in its plea that the plaintiff had any options upon the Cauto lands, and the denial by Sir William Van Horne in his testimony that anything was said by the plaintiff about such options, or that he ever agreed that any stock should be transferred to the plaintiff for the options or anything else.   Considering the form of the pleadings and the theory upon which the action was tried, the plaintiff was not entitled to recover the agreed value of the share of stock except upon proof that he possessed options which vested him with the exclusive control of the disposition of the property which was the subject of the contemplated purchase.   His omission to give such proof, taken together with the evidence showing that he had no real option on the property, established a failure of the main consideration for the contract, even accepting as entirely true his version of the interview between Sir William Van Horne and himself.

If these views are correct, it follows that the motion for a new trial should have been granted.

GOODRICH, P. J., HIRSCHBERG and JENKS, JJ., concurred; HOOKER, J., dissented.

Judgment and order reversed and new trial granted, costs to abide the event.